LOUISA COUL, Appellant, v. GEORGE B. PECK DRY GOODS COMPANY.
—32 S. W. (2d) 758.

Court en Banc, December 1, 1930.

*Bert S. Kimbrell* and *Walter W. Calvin* for appellant.

*Morrison, Nugent, Wylder & Berger* for respondent.

WALKER, J.—This is a suit for damages for personal injuries alleged to have been caused by the negligence of the defendant. Upon a trial to a jury the court sustained a demurrer to plaintiff's evidence and instructed the jury to return a verdict for the defendant. A verdict was returned in conformity with the instruction, and from the judgment entered thereon the plaintiff has appealed.

The defendant in the operation of a retail store in Kansas City maintained a department for the delivery of goods to its patrons. Regular and extra drivers were employed by it to make its deliveries. The regular drivers made deliveries in trucks furnished by the defendant. The extra drivers used their own vehicles. John H. Hubbs was an extra driver. It was his car which collided with that in which the plaintiff was riding at the time of her injury. Hubbs's contract with the defendant was verbal. It was not for any specific length of time and was terminable at the will of the defendant. He commenced work for the defendant during the holiday season in 1922. He furnished his own car and was paid for his services $2.25 per hour. He reported each morning at the office of the defendant and registered for labor. When he registered he was required to report the number of hours he had served the defendant during the preceding day. When he received goods for delivery he was furnished with the names and addresses of the persons to whom they were to be delivered. If the packages were C.O.D. he was required to collect the amounts due thereon and account to the defendant for the sums

collected. If amounts due on such packages were not paid to him he was required to return them to the defendant.

It is the contention of the defendant and was so urged in support of its demurrer, that the extra drivers were employed by the defendant upon an entirely different basis from that upon which it employed its regular drivers. This contention presents the vexed question in this case, viz: was Hubbs at the time of the plaintiff's injury a servant or employee of the defendant, as it is conceded was the relation sustained by the regular drivers, or was he an independent contractor? The contrasted relations to the defendant of these parties, as shown by the facts, may be thus stated:

The regular drivers were upon the pay-roll as employees of the defendant; they had prescribed hours of employment; they drove trucks furnished by the defendant; they followed in the discharge of their duties specified routes; they were paid regular wages, regardless of the amount of work they performed; they were required to report at the defendant's garage each morning and return undelivered goods to the defendant's barn each evening. As to the details of their work they were to account to the defendant as to the manner in which they spent their working hours.

The extra drivers, not on the regular pay-roll, were not required to report each morning at the defendant's garage, but when their services were required they were to call at defendant's store for the goods they were to deliver. In the delivery of such goods they provided their own cars or trucks and also their drivers and furnished their own gasoline and oil. Their remuneration was based upon the hours devoted to the defendant's work by each truck and driver furnished by them; they were authorized to substitute drivers regardless of the defendant; they were not given designated routes as were the regular drivers but merely lists of the names and addresses of the persons to whom goods were to be delivered; they sorted the packages to be delivered and made out their own routes of delivery. In the event all the packages delivered to an extra driver were not delivered on the day they were received by an extra driver he was authorized to retain the same over night or until the package was delivered by him. The time to be credited to an extra driver by the defendant was determined by the report made by the former to the latter. Such was the nature of an extra driver's employment, that, if he so desired, he would be authorized, after any delivery was completed, to engage during that day in other employment than that of the defendant.

I. Under the foregoing statement of the facts we are, therefore, to determine the relation sustained by Hubbs to the defendant.

Probably the most succinct definition of an independent contractor is that quoted with approval in Flori v. Dolph, 192 S. W. (Mo.) 949, 950, to this effect: An independent contractor is one who, exercising an independent employment, contracts to do work according to his own methods, without being subject to the control of his employer, except as to the result of his work. [McGrath v. St. Louis, 215 Mo. l. c. 210, 114 S. W. 611; 14 R. C. L. 67, par. 2.]

Personal service is a marked characteristic of the relation of master and servant. In the performance of his services Hubbs not only had the right to use his own or such other vehicle as he chose, but to employ another to drive the same. The right of substitution does not connote personal service; on the contrary it is indicative of an independent contractual relation. Certainly it cannot be said with an intelligent regard for the meaning of the relation that an employee has or could have the power of substituting another for himself in the performance of his prescribed duties.

Definite hours of labor is another requisite of the existence of the relation of master and servant. Hoelker v. American Press, 317 Mo. 64, 296 S. W. 1008, furnishes the most recent illustration of the affirmative application of this rule. In that case the employee worked upon a time schedule and was required to report at his employer's place of business at a specified hour. Hubbs was not required to conform to this rule. He was not obligated to observe definite hours, either in reporting for labor or in performing the same. He went to the defendant's place of business at hours most convenient for the receiving of goods by him for delivery, and returned, not at any designated time, but when his delivery had been made—in the meantime the goods remained in his possession or control. Nor was he limited to any particular route in his deliveries or subject to any restrictions as to the manner in which he would perform his work other than to render such prompt service as is reasonably required under any contractual relation and to correctly account for the goods delivered to him.

The Hoelker case is cited by the appellant as an authority for the contention that Hubbs sustained the relation of a servant or employee of the defendant. The facts in that case, as well as those in the Thomassen v. West St. L. etc. Co., 312 Mo. 150, and in Lawhon v. St. Joseph Veterinary Laboratories, 252 S. W. (Mo.) 44, when subjected to an analysis in connection with those in the instant case disclose that the distinguishing features of the latter case are not to be found in those cited. Construed, therefore, in the light of their actual facts the cases cited cannot be held to sustain the plaintiff's contention. Other cases cited by the appellant are clearly distinguishable from those in the instant case and we have not burdened this opinion with analyses of the same.

Having set forth by way of contrast the facts necessary to constitute one an independent contractor and those required to establish the relation of master and servant, we are of the opinion that the latter relation did not exist between the defendant and Hubbs at the time the plaintiff was injured and that the demurrer to the plaintiff's evidence was properly sustained by the trial court.

The judgment is, therefore, affirmed.

PER CURIAM:—The foregoing opinion of WALKER, J., in Division Two, is adopted as the opinion of Court en Banc. *Ragland, C. J., While, Atwood,* and *Henwood, JJ.,* concur; *Blair, Frank* and *Gantt, JJ.,* dissent.